# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ANTWOINE McKINLEY JONES, ) <br>     Plaintiff             ) <br>                               ) <br>                               ) <br>     v.                          ) <br>                               ) <br> **DR. HAPPY SMITH, et al.,**  ) <br>     Defendants        ) | Civil Action No.: 7:17cv00244 <br><br><br><br> **MEMORANDUM OPINION** <br> By: P<small>AMELA</small> M<small>EADE</small> S<small>ARGENT</small> <br> United States Magistrate Judge |

The pro se plaintiff, Antwoine McKinley Jones, ("Jones"), an inmate incarcerated at Red Onion State Prison, ("Red Onion"), brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Dr. Happy Smith, M.D., and Vicki Phipps,[1] the Medical Administrator at Red Onion, have been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. This case is before the court on the defendants' Motion To Dismiss, (Docket Item No. 28) ("Motion"). This case is before the undersigned upon transfer based on the consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

*I. Facts*

In his verified Complaint, (Docket Item No. 1), Jones alleged that on July 25, 2016, Phipps, as Medical Administrator at Red Onion, notified him that Dr. Smith had denied his request to use previously prescribed orthopedic footwear in

---

[1] In his Complaint, Jones lists this defendant's name as Vikki Phipps. In the responsive pleadings, this defendant's name is listed as Vicki Phipps. The court believes that this is the correct spelling of this defendant's first name and will use the correct spelling.

deliberate indifference to his serious medical needs. Jones alleged that this footwear had been approved by Dr. Mark Amonette, M.D., the Virginia Department of Corrections, ("VDOC"), Chief Physician, for use by inmates housed in Security Level 4 and 5 correctional facilities.

Jones further alleged that Phipps has refused to grant him a medical transfer to another VDOC facility where he might use the needed footwear and failed to provide him with any substitute medical equipment. Jones stated that the orthopedic footwear was prescribed for his use by an orthopedic specialist at the Medical College of Virginia, ("MCV"), to reduce pain and prevent further injury to his fused heel. He said that walking without the orthopedic footwear caused him great pain daily.

Jones also attached to his Complaint a number of his VDOC medical records. An April 12, 2012, report from a nurse at Nottoway Correctional Center, ("Nottoway"), noted that Jones complained of left foot pain when he walked due to multiple pins in his foot and a rod in his heel. (Docket Item No. 1-1 at 1.) The note stated that Jones requested special shoes. The nurse referred Jones to the medical doctor to discuss his request for special shoes. A subsequent note stated that Jones did not attend this doctor's appointment.

Jones saw another nurse at Nottoway on June 14, 2012, who again referred him to the doctor for complaints of left foot, heel and ankle pain. (Docket Item No. 1-1 at 3.) According to Jones, he had injured his left foot in 2004 and had reconstructive surgery in 2008. The doctor ordered x-rays of Jones's left foot and made a referral to an orthopedic doctor. (Docket Item No. 1-1 at 3.) X-rays of Jones's left foot, taken on June 20, 2012, showed internal fixation and arthrodesis

of the talocalcaneal joint and a small dorsal spur of the tarsal navicular. (Docket Item No. 1-1 at 4.)

X-rays of Jones's left foot, taken on August 6, 2012, showed talocalcaneal fusion and internal fixation hardware, which appeared stable, with mild midfoot osteoarthritis, with hallux valgus and mild osteoarthritis at the first metatarsal phalangeal articulation. (Docket Item No. 1-1 at 2.) The radiologists reported that these x-rays showed no significant change from x-rays taken in March 2009.

Jones was seen by Scott J. Campbell with Powell Orthotics and Prosthetics on September 4, 2012. (Docket Item No. 1-1 at 6.) Campbell recommended that Jones receive custom orthotics and special boots to give more support to and reduce the pain in his left foot. On September 18, 2012, Jones's request for the footwear was approved. (Docket Item No. 1-1 at 9.) A return appointment at Powell Orthotics and Prosthetics was made to fit Jones with the footwear. Jones received the orthopedic footwear on November 9, 2012. (Docket Item No. 1-1 at 10.)

X-rays taken of Jones's left foot on July 29, 2015, showed no definite evidence of any hardware failure or complication, but showed tibiotalar and talonavicular degenerative changes with irregularity of the medial malleolus consistent with prior injury. (Docket Item No. 1-1 at 13.) The radiologist's impression was mildly progressed degeneration at the ankle joint with stable degeneration of the talonavicular and subtalar fusion.

Jones was seen in the Medical Department at Sussex II State Prison on October 22, 2015, for complaints of sharp unbearable pain in his left ankle, which

was particularly worse with weight bearing. (Docket Item No. 1-1 at 14.) As a result, Jones was referred back to Powell Orthotics and Prosthetics for a reevaluation of his footwear. (Docket Item No. 1-1 at 15.) Jones was seen by Campbell again on November 24, 2015. (Docket Item No. 1-1 at 17.) Campbell recommended new footwear. Campbell saw Jones again on January 4, 2016, for a final fitting of new footwear. (Docket Item No. 1-1 at 24.)

The medical records reflect that Jones was transferred to Red Onion some time prior to June 22, 2016. Medical records from Red Onion dated July 7, 2016, show that Security would not approve Jones's orthopedic footwear for use because of metal eyes and shoe laces. (Docket Item No. 1-1 at 29.) On January 18, 2017, Jones was seen in the Medical Department at Red Onion, requesting to be allowed to wear his prescribed footwear. (Docket Item No. 1-1 at 32.) The medical records also show that someone contacted Powell Orthotics and Prosthetics on January 19, 2017, to determine if shoes with Velco straps could be ordered for Jones. (Docket Item No. 1-1 at 32.) The records note that acceptable footwear could be ordered for Jones without a return appointment. (Docket Item 1-1 at 32.)

Jones also attached to his Complaint a copy of an October 2, 2016, letter he wrote to Dr. Amonette requesting that VDOC provide him with his prescribed orthopedic footwear. (Docket Item No. 1-1 at 38-41.) In this letter, Jones stated that he was transferred to Red Onion on May 27, 2016, and his footwear was confiscated as a security threat. Jones requested a medical transfer to Sussex I or another VDOC facility to make the footwear available to him again or allow him to purchase new acceptable orthopedic footwear.

Jones also attached an Offender Request form, dated December 14, 2016. (Docket Item No. 1-1 at 42.) Jones, again, requested a transfer to another facility to allow him to wear his prescribed footwear. He stated that the inability to wear his prescribed footwear was causing him pain. Phipps responded, "I have reviewed your medical record and see no medical reason to put you in for a medical transfer at this time." (Docket Item No. 1-1 at 42.) Jones attached another Offender Request, dated December 20, 2016. (Docket Item No. 1-1 at 43.) Jones asked why he was not being provided with replacement footwear when it was documented that he had a medical need for special footwear. He also informed Phipps that the refusal to allow him to wear his prescribed footwear was causing him a great deal of pain. Phipps responded, "It is up to the physician to order you shoes if he feels they are medically necessary and security to approve them. Shoes is [sic] not a medical reason for a transfer." (Docket Item No. 1-1 at 43.)

Jones also attached a copy of an Informal Complaint, dated December 22, 2016. (Docket Item No. 1-1 at 44.) Jones complained that Phipps was denying him a medical transfer even though she knew that he needed special footwear, and she had been unable to find substitute footwear that would reduce his foot pain. Phipps responded, "This will be up to the physician to refer you out for medical shoes if needed." (Docket Item No. 1-1 at 44.) Jones also attached a copy of a Regular Grievance, dated January 2, 2017. (Docket Item No. 1-1 at 45.) On this Grievance, Jones complained that the refusal to allow him to wear his special footwear or, otherwise, to approve a transfer to another VDOC facility, was causing him pain. Jones requested to be immediately provided with suitable available footwear or to be transferred to an institution that would allow him to wear his special footwear. This Regular Grievance was rejected at intake on January 4, 2017, by J. Messer because it contained a request for services. (Docket Item No. 1-1 at 46.) That

intake decision was upheld on appeal on January 9, 2017. (Docket Item No. 1-1 at 46.)

In support of their Motion, the defendants have filed an affidavit from Dr. Smith, (Docket Item No. 37) ("Smith Affidavit"). In this affidavit, Dr. Smith stated that he was employed as a contract physician at Red Onion from January 2015 to November 2016. Dr. Smith stated that he saw Jones on June 22, 2016, and renewed prescriptions for pain medications for his knee and foot problems. According to Dr. Smith, he first received information that Jones was requesting to be able to use his orthopedic work boots around July 16, 2016. He said that, because Jones's boots contained metal grommets, shoelaces and metal structures, security officers at Red Onion would not approve Jones's use of the boots for security reasons.

Dr. Smith stated that he saw Jones again on August 2, 2016, with complaints of right knee pain. He said that Jones did not complain of any ongoing problem with his left foot on this occasion; nor did he mention the need for use of his orthopedic boots. Dr. Smith stated that he saw Jones for the last time on September 22, 2016. On this occasion, Dr. Smith told Jones that Security would not approve the use of his orthopedic boots at Red Onion. Dr. Smith also told Jones that he was exploring whether there were any other footwear options for Jones that Security would approve. Dr. Smith stated that he was unable to resolve the issue because "there were no shoes available that met his need and satisfied the safety concerns that security had." (Smith Affidavit at 3.)

Dr. Smith also stated that, at all relevant times, Jones was stable with respect to his feet. He said that Jones's then most recent x-rays of his left ankle showed a

healed, stable condition with only mild arthritis. He said that the hardware in Jones's ankle was stable with no effusion. He said that Jones had a "functional ambulatory gait without apparent distress with walking." (Smith Affidavit at 3.) Dr. Smith said that the medical records showed no orthopedic events concerning ambulation, deformity or disruption of Jones's activities of daily living while he was the physician at Red Onion. Dr. Smith also stated that Jones's prescribed footwear was a pair of work boots, and Jones was not employed while he was at Red Onion. According to Dr. Smith, there was no compelling medical reason for Jones to have this type of boot, and Jones's request for these orthopedic shoes was not a serious medical need at any time relevant to his treatment of Jones.

Jones also filed an affidavit with the court. (Docket Item No. 39) ("Jones Affidavit"). In this affidavit, Jones stated that his orthopedic footwear was confiscated upon his transfer to Red Onion on May 27, 2016. (Jones Affidavit at 1.) He said that "security" told him that Dr. Smith would have to approve his usage of the footwear. Jones stated that Dr. Smith reviewed his chart on June 7, 2016, and confirmed his medical need for the use of his orthopedic footwear. Jones said that he sent a medical request to Phipps on June 25, 2016, asking that his footwear be turned over to Security to be approved for return to him. (Jones Affidavit at 1-2.) He said that he informed Phipps that he was in pain when walking without wearing his prescribed footwear. (Jones Affidavit at 2.)

Jones said that he asked to be placed on sick call on July 8, 2016, so that he could speak to Dr. Smith about ordering new orthopedic footwear that he could wear at Red Onion. Jones said that he filed another request to be seen by Dr. Smith due to left foot and right knee pain on July 10, 2016. He said that he informed medical personnel on this request that his left foot hurt to walk upon it. Jones said

that he sent another request on July 18, 2016, asking to be seen by the doctor and stating that medical personnel were refusing to address his serious medical need and asking that Dr. Smith start the process for him to be fitted for new acceptable, medical footwear. (Jones Affidavit at 3.) On July 25, 2016, Jones sent another request, again, asking that Dr. Smith start the process for him to be fitted for new footwear. Jones said that he, again, informed medical personnel that walking was difficult and painful and that the pain in his left foot was worsening. Jones said that he sent his last request to be seen by Dr. Smith on August 14, 2016, requesting that Dr. Smith order that Jones be sent to the Western Region's approved medical shoe vendor to be fitted for new orthopedic footwear. He said that Phipps responded, "Dr. Smith is continuing to work on this." (Jones Affidavit at 3.)

Jones stated that he also sent a request to Red Onion Warden Barksdale on July 10, 2016, asking for his help in starting the process to be fitted for new orthopedic footwear. (Jones Affidavit at 2.) He said that he informed Barksdale of his serious medical need and that "his staff" was deliberately indifferent to his serious medical need. Jones said that Phipps responded to this request on July 22, 2016, and stated, "It is up to security here if the shoes are approved or not and they were not approved when Dr. Smith took them over there. Dr. Smith will have to put you in for more shoes if he feels medical shoes are necessary." (Jones Affidavit at 2.)

Jones said that he filed an Informal Complaint on July 25, 2016, complaining of Dr. Smith's denial of usage of his current orthopedic footwear without ordering replacement footwear. (Jones Affidavit at 4.) He said that Phipps responded, "They have shoe strings and are not allowed here at [Red Onion]." (Jones Affidavit at 4.)

Jones said that he saw Dr. Smith again on August 2, 2016, for right knee pain because Dr. Smith would not discuss any issue concerning his left foot problem or his need for orthopedic footwear. He said that he saw Dr. Smith again on September 22, 2016, and, again, he asked about starting the process to receive new orthopedic footwear. He said that Dr. Smith told him, "your boots were disapproved due to strings and metal ring eyelets." (Jones Affidavit at 4.) He said that this was the last time that he saw Dr. Smith. Jones stated that, during his treatment by Dr. Smith, Dr. Smith never physically examined or ordered x-rays of his left foot to enable him to make a medically informed decision with regard to Jones's need for orthopedic footwear.

Jones stated that his previously ordered orthopedic footwear are not "work boots," as characterized by the defendants. (Jones Affidavit at 5.) He stated that they were standard model non-diabetic orthopedic footwear available for VDOC inmates to purchase and use in up to Security Level 4 facilities. Jones stated that when he arrived at Red Onion, he had his orthopedic footwear pursuant to a physician's prescription stating that he medically needed them. Jones said that Dr. Smith ignored this medical need, causing him a great deal of pain. He also said that the current physician at Red Onion had ordered that he receive acceptable orthopedic footwear, and he was awaiting the arrival of the footwear.

Attached to Jones's Affidavit is a copy of a Red Onion Health Services Complaint and Treatment Form, dated June 7, 2016, which shows that Dr. Smith conducted an intake assessment of Jones. In this note, Dr. Smith wrote, "check on ortho[pedic] shoes." (Docket Item No. 39-1.)

*II. Analysis*

The defendants argue that, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), Jones's Complaint fails to state a claim against them for deliberate indifference to his serious medical needs. Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12 also states that, if matters outside of the pleadings are presented to court on a Rule 12(b)(6) motion, the motion must be treated as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). Here, both sides have presented matters outside of the pleadings for the court's consideration. Therefore, the court will treat the motion as one for summary judgment.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter

of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

In this case, Jones claims that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. In particular, I interpret Jones's Complaint to allege two claims: 1) that Phipps and Dr. Smith were deliberately indifferent to his serious medical need for orthopedic footwear by failing to provide the footwear for him; and 2) that Phipps was deliberately indifferent to his serious medical need by refusing to approve a medical transfer to another VDOC facility where he would be allowed to wear orthopedic footwear.

The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). This includes a requirement that a state provide medical care to those it punishes by incarceration. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Godfrey v. Russell*, 2015 WL 5657037, at *8 (W.D. Va. Sep. 24, 2015) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)); *Chapman v. Rhodes*, 434 F. Supp. 1007, 1020 (S.D. Ohio 1977), *aff'd*, 624 F.2d 1099 (6th Cir. 1980), *rev'd on other grounds*, 452 U.S. 337, 344 (1981). A claim for deliberate indifference to serious medical needs requires both an objective and a subjective showing. Objectively, the medical

condition must be "sufficiently serious," meaning that it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). As for the second, subjective component, a defendant must be "deliberately indifferent," which occurs when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *see also Iko*, 535 F.3d at 241.

In this case, the uncontradicted facts currently before the court appear to meet the objective component of a deliberate indifference claim in that Jones's medical condition was "sufficiently serious" that at least two physicians have prescribed that Jones receive special orthopedic footwear. Thus, these physicians have found that Jones suffers from a medical condition needing treatment. *See Iko*, 535 F.3d at 241. While Dr. Smith has provided evidence that there was "no compelling medical reason" for Jones to have the specific orthopedic footwear confiscated from him, Dr. Smith, in his affidavit, did not state that Jones had no medical need for any type of orthopedic footwear. In fact, Dr. Smith's affidavit appears to concede Jones had a medical need for orthopedic shoes when he said that he could find no shoes that met Jones's "need" and which satisfied security concerns. (Smith Affidavit at 3.) Even if Dr. Smith's affidavit were to be interpreted to include a statement that Jones had no medical need for any orthopedic footwear, it would only create a genuine dispute of material fact on this issue.

Turning to the subjective component of a deliberate indifference claim, I

also find that there is a genuine dispute of material fact before the court on this issue. To prove the subjective component of a deliberate indifference claim, a prisoner must show that a defendant knew of and disregarded an excessive risk to the prisoner's health or safety. Thus, a prisoner must prove that a defendant had actual knowledge of the risk of harm to the inmate and that the defendant also recognized that his actions were insufficient to mitigate the risk of harm arising from the prisoner's medical needs. *See Iko*, 535 F.3d at 241. The court recognizes that this subjective component can be difficult for a prisoner to prove. *See Iko*, 535 F.3d at 241. As with any element of a claim, however, this subjective element may be shown by circumstantial evidence.

In this case, Jones has presented evidence that he suffered from a painful condition causing at least two physicians to prescribe treatment in the form of orthopedic footwear to help relieve this pain. Jones also has presented evidence, in the form of his VDOC medical records, from which a jury could find that the defendants knew of Jones's painful foot condition and knew of the previously prescribed treatment. Despite Dr. Smith's statements to the contrary in his affidavit, the medical evidence presented shows that he knew that Jones suffered from a serious painful medical condition, in that Dr. Smith prescribed pain medication to address Jones's complaints of left foot pain. Also, Jones has provided evidence of numerous occasions on which he informed Phipps of this painful condition and sought her assistance. Further, evidence before the court shows that both Dr. Smith and Phipps knew that Jones had been deprived of his previously prescribed treatment for this condition -- his orthopedic footwear -- and that no attempt was made to obtain other orthopedic footwear that would be acceptable to Red Onion's security concerns. Jones also has presented evidence that he informed both defendants that the denial of his orthopedic footwear had

caused his left foot condition to be more painful. While the defendants have presented evidence to the contrary, a jury could find that Jones's evidence shows that the defendants had actual knowledge that denial of Jones's orthopedic footwear was causing him increased pain, and they knew that their actions were insufficient to mitigate this increased pain, in that they took no action to provide him with substitute footwear. Jones also has provided evidence that within days of being seen by a new treating physician at Red Onion, arrangements were made for him to receive orthopedic footwear that met Red Onion's security concerns.

The defendants also argue that Jones's claims against Phipps should be dismissed because she played no active role in his medical treatment, but rather simply replied to his repeated requests to receive substitute orthopedic footwear or receive a transfer to a VDOC facility where he could wear his prescribed footwear. I find that the evidence before the court demonstrates a genuine dispute in material fact on this issue. Jones has sued Phipps in her individual capacity as the Medical Administrator at Red Onion. Whether Phipps, in this role, had the authority to approve sending Jones to an outside source to provide substitute orthopedic shoes or to approve a transfer to another VDOC facility for medical reasons is not clear at this point. However, Phipps's responses to Jones's requests for such a transfer appear to show that she had that authority. In particular, in her December 20, 2016, response to Jones's Offender Request, Phipps wrote: "I have reviewed your medical record and see no medical reason to put you in for a medical transfer at this time." In her December 28, 2016, response to Jones's Offender Request, she stated, in part: "…[S]hoes is [sic] not a medical reason for a transfer," thus implying that she made that decision, also. Furthermore, the mere fact that Phipps was the person to whom each of Jones's requests for substitute orthopedic footwear was routed is evidence that she had the authority to take some action to

remedy the situation.

Also, there is no doubt that a prisoner's right to be free from cruel and unusual punishment caused by deliberate indifference to his serious medical needs was clearly established law at all times relevant to Jones's claims. Based on the genuine disputes in fact set forth above, I cannot find that the doctrine of qualified immunity protects the defendants from Jones's claims. I note that the defendants argue in their legal memorandum that attempts were made to obtain substitute footwear for Jones. However, the defendants have not provided any evidence of any such efforts to the court other than Dr. Smith's statement in his affidavit that he "did attempt to work out a compromise" and "there were no shoes available that met [Jones's] need and satisfied the safety concerns …." Again, evidence that the new physician at Red Onion was able to quickly arrange for Jones to receive acceptable orthopedic footwear would contradict this statement.

The court does find that the uncontested facts before it show that Jones is not entitled to injunctive relief. In his Complaint, Jones requested the court order that he be allowed to use his previously prescribed orthopedic footwear at Red Onion or that the VDOC provide him new orthopedic footwear free of charge or order his transfer to another VDOC facility. In his affidavit, Jones has admitted that his request for injunctive relief is now moot, in that he is being supplied with a pair of substitute orthopedic shoes.

Based on the above-stated reasons, the court will deny the Motion, except that it will enter summary judgment in the defendants' favor on Jones's request for injunctive relief.

An appropriate Order will be entered.

ENTERED: August 7, 2018.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE